## ROOSEVELT v. NASHVILLE, C. & ST. L. RY. CO.

(Circuit Court, S. D. New York.   March 7, 1904.)

1. CORPORATIONS—BONDS—GUARANTY BY ANOTHER CORPORATION—ULTRA VIRES.

Defendant railroad company, as a part of a contract for the extension of its road and for the construction of a blast furnace by an iron company, agreed to guaranty the iron company's bonds issued for the construction of the blast furnace, and on receiving the bonds executed a guaranty thereon, and sent them to a bank in New York for sale. Plaintiff purchased certain of the bonds of the bank, the proceeds being remitted to defendant, by which the money was paid to the iron company in satisfaction of the amount which the iron company expended under its agreement with defendant in the erection of the furnaces. Held, that defendant's receipt of the proceeds of the bonds completed the transaction so far as plaintiff was concerned, and that defendant was therefore liable to plaintiff on the guaranty without regard to whether defendant had power to bind itself by guaranty for the benefit of the iron company.

At Law.

George H. Yeaman, for plaintiff.

George W. Wickersham, for defendant.

WHEELER, District Judge.   The defendant had a contract with the Ætna Manufacturing, Mining & Oil Company, by which it was mutually agreed that the defendant should extend its Centerville branch to the iron company's ore beds, about 11 miles, including a bridge over Duck river; that the iron company, for the purpose of aiding in the construction of the bridge, should take, at 90 cents on a dollar, 30 of the defendant's 6 per cent. 40-year $1,000 gold bonds, and take and pay for at par 20 more of said bonds, to aid in the construction of the railroad; and that the iron company should erect a blast furnace at Ætna, near the line of that branch, at a cost of not less than $50,000, with provisions for rates and amount of transportation over the defendant's road; and the defendant was to guaranty and indorse $105,000 of the bonds of the iron company, the proceeds of which were to be alone invested or expended in the erection of the furnace or furnaces and buildings and improvements at the ore beds of the iron company's property on the defendant's branch line.

128 F.—30

· The iron company borrowed money and erected the furnaces, and made and executed 105 $1,000 mortgage bonds, dated December 1, 1883, due December 1, 1913, with interest at 6 per cent. semiannually, due June 1st and December 1st in each year at the Chemical National Bank in New York City, which were delivered to the defendant, and upon which the defendant's president, pursuant to a vote of its stockholders and directors, indorsed on each bond: "For value received the Nashville, Chattanooga and St. Louis Railway guarantees the payment of the principal and interest of the within bond. Jas. D. Porter, Prest."—and sent them to the Gallatin National Bank at New York for procuring certification by the National Trust Company, trustee in the mortgage, and for sale.

The plaintiff's firm, of which he is the survivor, purchased and paid for to the Gallatin National Bank 100 of these $1,000 bonds with the guaranty thereon, the proceeds of which the bank credited to the defendant, and which the defendant paid over to the iron company to replace money borrowed by the iron company for the erection of the furnaces and increasing its facilities. The iron company and its successor, the Southern Mining Company, paid the interest on the bonds purchased by the plaintiff's firm to 1893. After that the defendant paid the same to December 1, 1902, and refused to pay further. This suit is brought to recover the interest next due at that date. The defendant resists payment on the ground that the guaranty was wholly without the corporate power of the defendant, and not binding upon it.

It may be true that the defendant had not corporate power to bind itself by guaranty for the benefit of the iron company in its own business as such, and that recovery could not be had on the mere strength of the guaranty as a separate undertaking; but, if so, it is not disputed that the defendant would have power to negotiate paper with its guaranty thereon, as in this case, for the purpose of using the avails in its own business, whereby it would bind itself according to the terms of the guaranty. The evidence shows that the sale of these bonds to the plaintiff's firm was promoted by an officer of the iron company in its interest, but it does not show that the bonds were purchased from the iron company, or in any other manner than as stated from the Gallatin National Bank, where they had been sent by the defendant for the purpose of certification and negotiation.

: The transaction for the erection of the furnaces upon the defendant's extended branch, in promotion of its own business, was one into which the defendant might well enter for its own pecuniary advantage. The proceeds of the bonds came directly to the defendant, so far as the purchaser of the bonds was concerned. When the defendant sent them to the iron company, where it had agreed they should go, potentially or otherwise, it used them for its own purposes; that is, for the payment to the iron company of the amount which the iron company expended upon its agreement with the plaintiff in the erection of the furnaces. Whether that use of the money was warranted by the defendant's corporate powers was a matter which did not concern the plaintiff's firm. The taking of the proceeds of the bonds, which was as far as the firm needed to go, was well within them. This was a mere pecuniary transaction, consisting of the purchase of the bonds,

with the defendant's guaranty upon them as a part of them, which the defendant could well enter into with the plaintiff's firm as purchasers of the paper, as was done. When the bonds were purchased from where the defendant placed them, and the consideration for them reached the defendant at the Gallatin National Bank, where the defendant had sent the bonds, the transaction was complete, and the plaintiff was not under any obligation to see what use the defendant made of the proceeds. Whether it wasted them, or squandered them, or made good corporate use of them, would be immaterial.

These facts, which were not in dispute at the trial, placed this case outside of those where contracts and undertakings have been held not to be binding, because not within the scope of the powers of parties entering into them. Upon the undisputed facts in the case, as they stood at the trial, the plaintiff appeared to be entitled to a verdict for the interest accruing, due as sued for.

Upon this review of the facts, the verdict which was directed for the plaintiff at the trial seems now to be correct. There was no disputed question of fact to be submitted to the jury, wherefore the verdict was directed then, and upon these considerations the motion to set it aside must be overruled now.

Motion overruled, and judgment on the verdict.